UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-25185-BLOOM/Louis

BARBARA MARABELLA,

    Plaintiff,

v.

NCL (BAHAMAS), LTD.,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Plaintiff's Motion to Withdraw Doc 46 and Substitute a Corrected Document in Its Place, ECF No. [47] ("Motion to Withdraw"), and Motion for Leave to File a First Amended Complaint, ECF No. [47-1] ("Motion for Leave") (collectively, "Motions"). Defendant filed a response in opposition to the Motion for Leave, ECF No. [53] ("Response"), to which Plaintiff filed a reply, ECF No. [54] ("Reply"). The Court has considered the Motions, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion to Withdraw is granted but the Motion for Leave is denied.

**I.     BACKGROUND**

On December 17, 2019, Plaintiff filed the instant lawsuit. ECF No. [1]. This case stems from injuries Plaintiff allegedly sustained on November 21, 2019 while aboard Defendant's vessel, the M/V Norwegian Pearl (the "Vessel"). Plaintiff alleges she fell with "great force" onto the exterior deck of deck 13 while walking towards the Vessel's bow when a "strong wind twisted her body around counterclockwise and caused her to fall[.]" *Id.* at ¶ 15. The Complaint asserts a single claim for negligence based on multiple theories and seeks damages from Defendant for the injuries

she sustained in the incident. *See* ¶¶ 13-22. According to Plaintiff, her injuries arose from Defendant's negligence, which included its failure to restrict passenger access to the exit doors to the deck due to high wind conditions, its failure to warn persons exiting onto the deck of high wind conditions, and its failure to keep in place notice that passengers shall not use the exit doors to access the deck due to high winds and/or that exit doors to the deck are closed off due to high winds and/or that the high winds present a danger to passengers that use the exit doors to enter the outside deck area. *See id.* at ¶ 16.

On January 28, 2020, the Court entered a Scheduling Order, ECF No. [18], setting March 30, 2020 as the deadline for the parties to move for leave to amend the pleadings. Discovery was initially set to be completed by October 6, 2020, *id.*, but was later permitted to be completed by January 4, 2021, ECF No. [31], and then by March 23, 2021. ECF No. [50]. Plaintiff now moves for leave to amend the Complaint to assert a second count for negligence based on Defendant's alleged use of only "true wind" rather than "apparent wind" as the measure for the Vessel's decks. ECF No. [47-1] at 1.[1] As set forth in the proposed amended complaint, ECF No. [47-2], at the time of Plaintiff's incident, the Vessel was "steaming at 21.9 knots" with the "true wind" measuring 19 knots but the "apparent wind" feeling as if it was 35 knots. *Id.* at ¶ 30. Defendant purportedly has "a policy of closing its deck 13 to passengers and posting warning signs when winds exceed 25 knots," yet it only "closes its decks, and posts warning signs, based upon readings of 'true wind.'" *Id.* at ¶¶ 31-33. Plaintiff contends that she did not delay seeking leave to amend, noting that Vessel crewmembers Captain Vranic and second mate Igor Zec testified at their depositions in October

---

[1] According to Plaintiff, "true wind" is the wind relative to a fixed point, the observation of which is not affected by the motion of the observer while "apparent wind" is the wind observed aboard a moving vessel, being the vectoral combination of the true wind and the wind due to the ship's motion. *Id.* at 1-2.

2

21, 2020 and November 9, 2020 that the Vessel uses "true wind," and she did not seek leave earlier because "there was a chance that this case would resolve at the mediation held on November 19, 2020." ECF No. [47-1] at 2-3.

Defendant responds that leave should be denied because Plaintiff was dilatory and untimely in seeking leave, the proposed amendment is futile because the claim is time barred, and Defendant would be unduly prejudiced by allowing Plaintiff to bring additional claims at this stage in the proceedings. ECF No. [53]. Plaintiff replies that she was not dilatory, Defendant is not prejudiced by amendment because Defendant has always known (in contrast to Plaintiff) that "true wind" was used to make the decision to close decks, not "apparent wind," and the proposed claim is not time barred because the case "was pled as a wind case *ab initio*" and "remains a wind case." ECF No. [54].

The Motion, accordingly, is ripe for consideration.

## II.     LEGAL STANDARD

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A plaintiff should be afforded the opportunity to test their claim on the merits as long as the underlying facts or circumstances may properly warrant relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "In this circuit, these

'same standards apply when a plaintiff seeks to amend after a judgment of dismissal has been entered by asking the district court to vacate its order of dismissal pursuant to Fed. R. Civ. P. 59(e).'" *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). In any event, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman*, 371 U.S. at 182.

Further, the Court of Appeals for the Eleventh Circuit has explained that, "when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2, 1419 (11th Cir. 1998). Federal Rule of Civil Procedure 16 states that requests for leave to amend after the applicable deadline, as set in a court's scheduling order, require a showing of "good cause." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (quotation marks omitted); *see also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [courts] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). Additionally, a lack of diligence "is not limited to 'a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes' but also includes 'a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.'" *De Varona v. Disc. Auto Parts, LLC*, 285 F.R.D. 671, 673 (S.D. Fla. 2012) (quoting *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009)). If the party seeking

relief "was not diligent, the [good cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Thus, when a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis. *Sosa*, 133 F.3d at 1419. First, the movant must demonstrate good cause under Rule 16(b). Good cause exists when "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007) (citation omitted). "[E]ven if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made." *Id.* In this regard, a court's "evaluation of good cause [under Rule 16] is more stringent than its inquiry into the propriety of amendment under the more liberal Rule 15." *Id.* (citing *Sosa*, 133 F.3d at 1418). Accordingly, "the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired." *Id.*

Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to the movant; and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See Sosa*, 133 F.3d at 1419.

Regarding the second step of the analysis if the movant demonstrates good cause, the court must determine whether an amendment to the pleadings is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Sosa*, 133 F.3d at 1419.

Through this lens, the Court addresses the instant Motion.

## III. DISCUSSION

Leave to amend is unwarranted because Plaintiff fails to show good cause for seeking leave at this late stage. The Motion was filed on November 25, 2020, eight months after the March 30, 2020 deadline for the parties to file motions seeking leave to amend. Although Plaintiff maintains that the Motion is timely, the record reflects that Plaintiff did not seek leave to amend far earlier even when she discovered information supporting the new theory based on "apparent wind." For instance, on April 9, 2020, Defendant produced the Vessel's log to Plaintiff, which reflected wind measurements recorded by the bridge officers. ECF No. [53] at 2. According to Plaintiff, "the apparent wind could have been calculated from the data in the Logbook, by trigonometry or plotted in a geometry solution use of vectors on graph paper, a skill required of Deck Officers for mandatory Radar Use Certification." ECF No. [54] at 1-2. Thus, the information supporting leave was available to Plaintiff as of April 2020.

Additionally, the anemometer raw data produced to Plaintiff on August 24, 2020 reflected wind measurements with "TWSPD (m/s)," "true wind" in meters per second. *Id.* at 1 n.1. It did not show that wind measures used "apparent wind." Defendant, therefore, rightly points out that by August 2020 "Plaintiff was on notice of how the ship logged wind and that it does not log apparent wind." ECF No. [53] at 2. Moreover, while Plaintiff deposed Captain Vranic and Officer Zec in late October and early November 2020, confirming that Defendant uses "true wind" as its wind measurement, Plaintiff still intentionally—by her own admission—"delayed seeking [leave]" because "there was a chance that this case would resolve at the mediation held on November 19, 2020." ECF No. [47-1] at 3. Against this backdrop, the Court notes that the Motion was filed approximately a month before the then-pending discovery cutoff of January 4, 2021, which deadline was later extended on December 3, 2020 given Plaintiff's husband's medical status. ECF

6

Nos. [49]; [50].

Thus, when evaluating the Motion, Plaintiff was not diligent in timely seeking leave to amend, precluding a finding of good cause. *See, e.g.*, *Stephens v. Georgia Dep't of Transp.*, 134 F. App'x 320, 322 (11th Cir. 2005) (district court did not abuse its discretion in denying motion to amend complaint for lack of good cause, which motion was filed over six months after the amendment deadline and the reason for delay was plaintiff's discovery of a new legal theory through additional research); *Ultimate Fitness Grp., LLC v. Anderson*, No. 18-CV-60981, 2019 WL 8810370, at *2 (S.D. Fla. Jan. 30, 2019) (denying motion for leave because "[a]lthough Plaintiff may not have learned of the facts that purportedly establish a claim against Anderson until after the August 13, 2018 amendment deadline, Plaintiff's failure to seek leave to amend until months later — and within 25 days of the close of discovery – amounts to undue delay that precludes a finding of good cause"); *Sream, Inc. v. Munjal Corp.*, No. 18-CV-80743, 2019 WL 9048996, at *1 (S.D. Fla. Mar. 26, 2019) (denying leave to amend affirmative defenses where defendant waited until five months after the amendment deadline passed and six weeks after discovering the basis for the proposed amendment); *BrandNamesWatches Int'l LLC v. PNC Bank, Nat'l Ass'n*, No. 17-CV-62124, 2018 WL 9538219, at *1 (S.D. Fla. June 1, 2018) (denying leave to amend where plaintiff waited until after mediation and a month before the close of discovery, which was at "such a late stage of these proceedings"). Accordingly, amendment is unwarranted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion to Withdraw, **ECF No. [47]**, is **GRANTED**. The Motion for Leave, **ECF No. [47-1]**, is **DENIED**.

Case No. 19-cv-25185-BLOOM/Louis

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 4, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record